**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**

| | |
|---|---|
| JOHN BYRNE, Individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>          v.<br><br>WESTPAC BANKING CORPORATION, BRIAN CHARLES HARTZER, and PETER FRANCIS KING,<br><br>          Defendants. | **Case No: 3:20-cv-00171-AC** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'**
**CONSENTED MOTION FOR FINAL APPROVAL OF CLASS ACTION**
**SETTLEMENT AND PLAN OF ALLOCATION**

**TABLE OF CONTENTS**

**Page**

I.  **PRELIMINARY STATEMENT** .......................................................................1

II. **ARGUMENT** ...........................................................................................3

   A.  **The Court Should Finally Certify the Settlement Class** ..........................3

   B.  **The Court Should Approve the Proposed Settlement as Fair, Reasonable, And Adequate**...................................................................4

      1.  **The Standard for Final Approval of Class Action Settlements** ...........4

      2.  **Application of the Ninth Circuit's Criteria Supports Approval of the Settlement** ...................................................................................6

         a)  **The Strength of Plaintiffs' Case and Risks Associated with Continued Litigation**....................................................................6

         b)  **Surviving Procedural Hurdles and Establishing Liability** ...............7

            (1)  **Loss Causation and Damages Defenses** ..........................9

         c)  **The Expense and Likely Duration of Further Litigation**................10

         d)  **The Risk of Maintaining Class Action Status Through Trial** ........11

         e)  **Amount Offered in the Settlement** .....................................12

         f)  **The Extent of Discovery Completed and the Stage of the Proceedings** ..................................................................................14

         g)  **Counsel's Experience and Views** .......................................15

         h)  **The Settlement is Not the Product of Collusion** ..............................16

i

**3.     The Reaction of Class Members to the Proposed Settlement** ............**18**

**C.   The Notice Program Satisfied Due Process and Complied with Fed. R. Civ. P. 23(e)** ......................................................................................**19**

**1.     The Dissemination of Notice Satisfies Due Process** .............................**19**

**2.     Contents of the Notice Satisfy Due Process**...........................................**20**

**D.   The Plan of Allocation of the Net Settlement Fund Is Fair, Adequate, and Reasonable and Should Be Approved** ........................................................**22**

**III.     CONCLUSION** ................................................................................................**23**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ansell v. Laikin*,
No. CV 10-9292 PA (AGRX), 2012 WL 13034812 (C.D. Cal. July 11, 2012) ........................ 8

*Arnett v. Bank of Am., N.A.*,
No. 3:11-CV-1372-SI, 2014 WL 4672458 (D. Or. Sept. 18, 2014).............................. 6, 17, 18

*Barani v. Wells Fargo Bank, N.A.*,
No. 12CV2999-GPC KSC, 2014 WL 1389329 (S.D. Cal. Apr. 9, 2014).............................. 20

*Boring v. Bed Bath & Beyond of California Ltd. Liab. Co.*,
No. 12-CV-05259-JST, 2014 WL 2967474 (N.D. Cal. June 30, 2014).................................... 3

*Brown v. China Integrated Energy Inc.*, No. CV1102559BROPLAX,
2015 WL 12712081 (C.D. Cal. Aug. 19, 2015) ...................................................... 18

*Brown v. Price*,
No. 3:17-CV-00869-HZ, 2017 WL 4698025 (D. Or. Oct. 18, 2017) ................................ 15, 17

*Chambers v. Whirlpool Corp.*,
214 F. Supp. 3d 877 (C.D. Cal. 2016).................................................................. 12

*Cheng Jiangchen v. Rentech, Inc.*,
No. CV 17-1490-GW(FFMX), 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)......................... 7

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004).......................................................................... 5

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992)................................................................... 4, 5, 22

*Colesberry v. Ruiz Food Prod., Inc.*,
No. CVF 04-5516 AWISMS, 2006 WL 1875444 (E.D. Cal. June 30, 2006)........................ 20

*Destefano v. Zynga, Inc.*,
No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016)............................... 11, 14

iii

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005) .............................................................................................. 9

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) ............................................................................................ 20

*Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-CV-09405-CAS,
   2014 WL 439006 (C.D. Cal. Jan. 30, 2014) ...................................................... 15

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980) ........................................................................... 16

*Eminence Capital, LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003).............................................................................. 8

*Fishoff v. Coty Inc.*,
   No. 09 Civ. 628 (SAS), 2010 WL 305358 (S.D.N.Y. Jan. 25, 2010) .................. 8

*Franks v. Kroger Co.*,
   649 F.2d 1216 (6th Cir. 1981).............................................................................. 20

*Garner v. State Farm Mut. Auto. Ins. Co.*,
   No. CV 08 1365 CW EMC, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ............ 5

*Glass v. UBS Fin. Servs., Inc.*,
   No. C06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007)..................... 15

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015)................................................................................ 11

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)................................................................. 5, 6, 19

*Harris v. Vector Mktg. Corp.*,
   No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011)................... 17

*Hayes v. MagnaChip Semiconductor Corp.*,
   No. 14-CV-01160-JST, 2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ................ 8

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ........................................................................ 20

iv

*In re Atmel Corp. Derivative Litig.*,
No. C 06-4592 JF (HRL), 2010 WL 9525643 (N.D. Cal. Mar. 31, 2010)............................... 17

*In re Biolase, Inc. Sec. Litig.*,
No. SACV131300JLSFFMX, 2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) ....................... 13

*In re Bluetooth Headset Prod. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011)................................................................................................ 16

*In re BP p.l.c. Sec. Litig.*,
852 F. Supp. 2d 767 (S.D. Tex. 2012) .................................................................................... 8

*In re China Med. Corp. Sec. Litig.*, No. 8:11-1061 JLS (ANX),
2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) ........................................................................ 17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ................................ 7

*In re Heritage Bond Litig.*,
No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005)................................. 12, 22

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)........................................................................................... passim

*In re MicroStrategy, Inc. Sec. Litig.*,
148 F. Supp. 2d 654 (E.D. Va. 2001)..................................................................................... 22

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................................... 13, 16, 18

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985)........................................................................................... 9

*Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*,
No. 3:09-CV-00419-MMD, 2012 WL 5199742 (D. Nev. Oct. 19, 2012) ......................... 13, 15

*Janus Capital Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011) ............................................................................................................. 11

*Lee v. Enter. Leasing Co.-W.*, No. 3:10-CV-00326-LRH,
2015 WL 2345540 (D. Nev. May 15, 2015) ............................................................................ 4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' CONSENTED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION
Case No: 3:20-cv-00171-AC

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998)........................................................................... 4, 6, 14

*Marshall v. Holiday Magic, Inc.*,
   550 F.2d 1173 (9th Cir. 1977)............................................................................... 19, 21

*McPhail v. First Command Fin. Plan., Inc.*,
   No. 05CV179-IEGJMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ................................... 13

*Mendoza v. Tucson Sch. Dist. No.,*
   *1*, 623 F.2d 1338 (9th Cir. 1980)........................................................................... 19

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ........................................................... 10, 12, 15, 21

*Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982)................................................................................... 4, 6

*Perez v. Izea, Inc., et al.*,
   Case No. 2:18-cv-02784- SVW-GJS (C.D.Cal.)........................................................ 15

*Redwen v. Sino Clean Energy, Inc.*,
   No. CV 11-3936 PA (SSX), 2013 WL 12303367 (C.D. Cal. July 9, 2013) .................. 7, 15, 22

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993)................................................................................... 6, 10, 19

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976)................................................................................... 4

*Vinh Nguyen v. Radient Pharm. Corp.*,
   No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ............................... 9

*Vizcaino v. U.S. Dist. Court for W. Dist. of Washington*,
   173 F.3d 713 (9th Cir. 1999)................................................................................... 12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)................................................................................... 12

*Yang v. Focus Media Holding Ltd.*,
   No. 11 CIV. 9051 CM GWG, 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) .......................... 17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' CONSENTED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION
Case No: 3:20-cv-00171-AC

**Statutes**

15 U.S.C. § 78u-4(b)(3)(B) ................................................................................................ 14

**Rules**

Fed. R. Civ. P. 23 ................................................................................................. 1, 4, 19, 20

**Other Authorities**

4 Alba Conte & Herbert Newberg, Newberg On Class Actions § 11.53 ..................................... 19

Cornerstone Research, *Securities Class Action Settlements: 2019 Review and Analysis* ............. 13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' CONSENTED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION
Case No: 3:20-cv-00171-AC

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Edward Davies ("Davies" or "Lead Plaintiff") and Named Plaintiff John Byrne ("Byrne" and with Davies, "Plaintiffs"), respectfully submit this memorandum of points and authorities in support of their motion for: (i) final certification of the Settlement Class for purposes of this Settlement only; (ii) final approval of the proposed $3.1 million, plus accrued interest, settlement (the "Settlement") of the above-captioned class action (the "Action"); (iii) approval of the implementation of the Notice[1] program; and (iv) final approval of the proposed Plan of Allocation.[2]

## I.     PRELIMINARY STATEMENT

This $3.1 million all-cash settlement is an excellent result for the Settlement Class. The Settlement avoids the risks and expense of continued litigation, including the risks either of recovering less than the Settlement Amount or nothing at all. As described below and in the accompanying Fuks Declaration,[3] Plaintiffs faced, and would continue to face, Defendants'

---

[1] "Notice" collectively refers to the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, ("Long Notice"), Summary Notice of (i) Pendency of Class Action and Proposed Settlement; (ii) Settlement Hearing; and (iii) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Summary Notice"), and the Postcard Notice.

[2] All capitalized terms not otherwise defined herein shall have the same meanings set forth and defined in the Stipulation and Agreement of Settlement, filed on October 12, 2020 (the "Stipulation") (Dkt. No. 29-4).

[3] The Declaration of Sara Fuks in Support of Plaintiffs': (1) Consented Motion For Final Approval of Proposed Class Action Settlement and Plan of Allocation; and (2) Plaintiffs' Motion For Award of Attorneys' Fees, Reimbursement Expenses, and Award to Lead Plaintiff contains a detailed description of the allegations and claims, the Action's procedural history, and the events that led to the Settlement, among other matters.

1

vigorous opposition with respect to the legal and factual bases of Plaintiffs' claims. In particular, had the Settlement not been reached, Plaintiffs would have faced considerable hurdles in defeating Defendants' anticipated motion(s) to dismiss, certifying a class, surviving summary judgment, and proving scienter, loss causation, and establishing the Settlement Class's full amount of damages at trial.

As set forth in detail in the Fuks Declaration, the Parties reached the Settlement only after Plaintiffs and Lead Counsel: (i) conducted an extensive factual investigation of Westpac and the Individual Defendants, which included reviewing  publicly -available documents and filings both from the United States and Australia and retaining an investigator; (ii) researched, drafted and filed the initial complaint (the "Complaint") and drafted – but did not file – a 98-page Amended Class Action Complaint For Violations of The Federal Securities Laws ("Amended Complaint"); (iii) consulted with a damages expert;  (iv) prepared a detailed mediation statement and participated in a full-day mediation; and (v) negotiated and reached an agreement on the terms of a settlement and drafted the settlement documentation. Given Plaintiffs' informed assessment of the strengths and weaknesses of the claims and defenses asserted as well as the risks and delays of continued litigation and trial, the Settlement is fair, reasonable, and adequate. Accordingly, Plaintiffs respectfully request that the Court finally certify the Settlement Class for settlement purposes, approve Plaintiffs' implementation of the Notice program, grant final approval of the Settlement, and approve the Plan of Allocation.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' CONSENTED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION
Case No: 3:20-cv-00171-AC

II.    **ARGUMENT**

A.    **The Court Should Finally Certify the Settlement Class**

Without any objection from a member of a settlement class, courts typically finally certify settlement classes as part of the final approval process. *See, e.g., Boring v. Bed Bath & Beyond of California Ltd. Liab. Co.*, No. 12-CV-05259-JST, 2014 WL 2967474, at *2 (N.D. Cal. June 30, 2014) ("For the reasons discussed in the Court's Preliminary Approval Order, the Court finds that the requirements for certification of the conditionally certified settlement class have been met, and that the appointment of . . . Class Representative and . . . Class Counsel is proper.").

In seeking preliminary approval, Plaintiffs requested that the Court preliminarily certify the Settlement Class, only for settlement purposes. In the Amended Order Preliminarily Approving Class Action Settlement ("Preliminary Approval Order") (Dkt. No. 31), this Court preliminarily certified the Settlement Class as:

> all persons who purchased any Westpac securities traded on a U.S. exchange, including but not limited to, Westpac American Depositary Receipts ("ADRs") traded on the New York Stock Exchange ("NYSE") ("Westpac Securities") from November 11, 2015 to November 19, 2019, inclusive (the "Settlement Class Period"). Excluded from the Settlement Class are: (i) the Defendants; (ii) members of the Immediate Family of each of the Individual Defendants; (iii) any entity in which any Defendant has a controlling interest; (iv) the officers and directors of Westpac during the Settlement Class Period; and (v) the legal representatives, heirs, successors or assigns of any such excluded party. Also excluded from the Settlement Class are any persons and entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court. (Dkt. No. 31 at ¶1).

No Settlement Class member has objected to any aspect of the Settlement, including the definition of the Settlement Class or, more generally, the Court order certifying it. *See* Declaration of Josephine Bravata Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the

3

Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Bravata Decl." or "Bravata Declaration") at ¶11, attached as Exhibit 1 to the Fuks Decl.

Accordingly, and for all the reasons stated in Plaintiffs' Memorandum of Points and Authorities in Support of Consented Motion for Preliminary Approval of Proposed Class Action Settlement (Dkt. No. 29-3, at 17-24) and in this Court's Preliminary Approval Order (Dkt. No. 31, at ¶1), Plaintiffs now request that the Court: (i) finally certify the Settlement Class for purposes of carrying out the Settlement pursuant to Fed. R. Civ. P. 23(a) and (b)(3); (ii) appoint Lead Plaintiff as Class Representative; and (iii) appoint Lead Counsel as Class Counsel.

**B.      The Court Should Approve the Proposed Settlement as Fair, Reasonable, And Adequate**

### 1.      The Standard for Final Approval of Class Action Settlements

Rule 23(e) requires court approval for any class action settlement, encouraging approval of settlements that are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In the Ninth Circuit, "strong judicial policy [] favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). "[V]oluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Indeed, "there is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Lee v. Enter. Leasing Co.-W.*, No. 3:10-CV-00326-LRH, 2015 WL 2345540, at *4 (D. Nev. May 15, 2015) ("The Ninth Circuit has recognized a 'strong judicial policy that favors settlements,

particularly where complex class action litigation is concerned'") (quoting *Class Plaintiffs*, 955 F.2d at 1276).

Class action suits lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. Settlements of complex cases, such as this one, greatly contribute to the efficient utilization of judicial resources and achieve the speedy resolution of claims. *See, e.g., Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.") (citation and internal quotation marks omitted).

For a class action settlement to be finally approved, it must be "fundamentally fair, adequate, and reasonable." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). In making this determination, courts in the Ninth Circuit consider and balance pertinent factors, including: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.[4] *See Churchill Vill., L.L.C. v. Gen. Elec.*,

---

[4] With respect to the eighth factor, Settlement Class Members have until March 30, 2020 to object to the Settlement. If Plaintiffs receive any objections, Plaintiffs will address them in their reply papers in support of final approval.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' CONSENTED MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION
Case No: 3:20-cv-00171-AC

361 F.3d 566, 575–76 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026); *Officers for Justice*, 688 F.2d at 625 (same). Not all of these factors will apply to every class action settlement and, under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

Within the framework of pertinent factors and the policy favoring resolution of complex cases, the Court has discretion to determine whether a settlement is fair, reasonable, and adequate. *See Mego*, 213 F.3d at 458 ("Review of the district court's decision to approve a class action settlement is extremely limited.") (citing *Linney*, 151 F.3d at 1238). In applying the pertinent factors, the Court should not prejudge the merits of the case, in part because the Court will be called upon to decide the merits if the action proceeds. *See Officers for Justice*, 688 F.2d at 625 ("[T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. [I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."). For the following reasons, this Court should approve the Settlement as fair, reasonable, and adequate.

> **2.     Application of the Ninth Circuit's Criteria Supports Approval of the Settlement**
>
> **a)     The Strength of Plaintiffs' Case and Risks Associated with Continued Litigation**

To determine whether the proposed Settlement is fair, reasonable and adequate, the Court should balance the continuing risks of litigation against the benefits afforded to class members and the immediacy and certainty of a recovery. *See Mego*, 213 F.3d at 458. Although Plaintiffs believe that the case against Defendants is strong, the risk in complex class actions such as this one of no recovery whatsoever tempers their confidence. *Arnett v. Bank of Am., N.A.*, No. 3:11-CV-1372-SI,

2014 WL 4672458, at *6 (D. Or. Sept. 18, 2014) (recognizing the "risk of dismissal before trial or loss at trial [and] continued litigation would be expensive and time-consuming" and thus, supports approval). Securities class actions, such as this case, "are complex cases that are time-consuming and difficult to prove." *Cheng Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMX), 2019 WL 5173771, at *6 (C.D. Cal. Oct. 10, 2019); *Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSX), 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation, 'routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear'") (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *17 (S.D.N.Y. Nov. 8, 2010)). Had they failed to reach the Settlement, Plaintiffs would have confronted numerous challenges, including (i) defeating one or more motions to dismiss where Defendants would have raised merits issues, including falsity and scienter, as well as significant jurisdictional issues, given the pendency of a securities class action in Australia, (ii) achieving class certification, (iii) surviving summary judgment, (iv) proving liability and the Settlement Class' damages at trial, and (v) surviving an appeal on any possible verdict in their favor.

b)    **Surviving Procedural Hurdles and Establishing Liability**

As an initial matter, Defendants alerted Plaintiffs and the Court that their anticipated motion(s) to dismiss would seek dismissal on jurisdictional grounds, including both venue and *forum non conveniens*, as they believed Australia was the more appropriate forum to hear this case (due to parallel litigation in Australia). Although Plaintiffs believe that the U.S. courts, specifically this Court, was the appropriate forum to adjudicate the Action, this was not a foregone conclusion. Defendants' anticipated motion to dismiss would also have contested falsity and scienter.  As to

7

falsity, Defendants maintained that their challenged statements were not false or misleading in any way at the time they were made.  As to scienter, Defendants would likely have argued that even if Plaintiffs could establish a material misstatement or omission, they could not establish the requisite mental state of scienter—*i.e.*, that Defendants misled investors intentionally or with extreme recklessness. To succeed, the Amended Complaint must satisfy the strict pleading standards of the PSLRA which "requires a plaintiff to plead a complaint of securities fraud with an unprecedented degree of specificity and detail" and is "not an easy standard to comply with." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *see also In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) (noting that "authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading").

In addition to those procedural hurdles, Plaintiffs also faced numerous obstacles to establishing liability, as this was a complex, securities class action. *Ansell v. Laikin*, No. CV 10-9292 PA (AGRX), 2012 WL 13034812, at *7 (C.D. Cal. July 11, 2012) ("Courts routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.") (internal citations omitted). Specifically, Plaintiffs confronted substantial risks and uncertainties in proving, *inter alia*, that Defendants acted with scienter. Proving scienter in a securities case is often the most difficult element of proof and one which is rarely supported by direct evidence or an admission. *See*, *e.g.*, *Hayes v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2016 WL 6902856, at *5 (N.D. Cal. Nov. 21, 2016); *Fishoff v. Coty Inc.*, No. 09 Civ. 628 (SAS), 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010) (scienter is often considered "the most difficult and controversial aspect of a securities fraud claim."), *aff'd*, 634 F.3d 647 (2d Cir. 2011).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' CONSENTED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION
Case No: 3:20-cv-00171-AC

Further, even if Plaintiffs overcame Defendants' anticipated motion(s) to dismiss, extensive fact and expert discovery would likely then ensue, as well as a contested class certification motion, summary judgment motions and *Daubert* motions. If the case went to trial Plaintiffs would not only have to prove their claims at trial but post-trial motion practice would also then likely ensue. Throughout each phase of litigation, Plaintiffs would undoubtedly have faced a robust defense from Defendants' experienced counsel.

### (1)    Loss Causation and Damages Defenses

Another risk of continuing the litigation is the difficulty faced by Plaintiffs in proving loss causation and the Settlement Class' damages, which Defendants would contest at summary judgment, in pretrial *Daubert* motions, and at trial. The United States Supreme Court has confirmed that the law requires that "a plaintiff prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). Plaintiffs expect that Defendants would have asserted that the alleged corrective disclosure did not reveal any misrepresentations or omissions but rather any stock drop in the Settlement Class Period was the result of other confounding factors.

Resolution of these issues would require the testimony of expert witnesses and the Parties would end up in a "battle of experts" where it would be impossible to predict with any certainty which arguments a jury would favor. Se*e, e.g., Vinh Nguyen v. Radient Pharm. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) (approving settlement in securities case where "[p]roving and calculating damages required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the law" and "[t]he outcome of that analysis is inherently difficult to predict and risky") (citation omitted); *In re*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' CONSENTED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION
Case No: 3:20-cv-00171-AC

*Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986) (approving settlement where "it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions"). The outcome could well have depended on whose testifying expert the jury believed or even whether the jury was able to follow the economic theories the experts would use. The Settlement eliminates the risk that the jury might award less than the amount of the Settlement or nothing at all to the Settlement Class.

In sum, as a result of the availability to Defendants of the various defenses described, it is possible that, even if a court or a jury were to find that Defendants knowingly made misleading statements, Settlement Class Members would recover no damages, or damages in an amount smaller than the amount of the Settlement.

### c)     The Expense and Likely Duration of Further Litigation

The expense and likely duration of the Action supports final approval of the Settlement. *See Torrisi*, 8 F.3d at 1376 ("the cost, complexity and time of fully litigating the case all suggest that this settlement was fair"). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Here, the expense and duration of protracted litigation including discovery, class certification, and summary judgment, as well as preparing and trying the case to a jury, and any subsequent appeals, would be significant. If litigation were to continue (assuming Plaintiffs prevailed on a motion to dismiss) the case would proceed to discovery which would be costly and protracted.  Because

10

Westpac is an Australian Bank, all of their witnesses would be located in Australia. Lead Counsel would be required to take depositions and gather evidence abroad and would incur significant expenses in connection with taking multiple trips to Australia. Lead Counsel would also have been required to rely upon experts in market efficiency, damages, and banking experts, all of which would have required the expenditure of substantial additional costs. Barring a settlement, it is certain that this case would be litigated for years with the possibility that the end result would be no better for the Settlement Class, and might even be worse. *See Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *10 (N.D. Cal. Feb. 11, 2016) ("continuing litigation would not only be costly – representing expenses that would take away from any ultimate classwide recovery – but would also delay resolution and recovery for Settlement Class Members"); *cf Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction under *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011)).

The Settlement, therefore, provides sizeable and tangible relief to the Settlement Class now, without subjecting Settlement Class Members to the risks, duration, and expense of continuing litigation. This factor weighs strongly in favor of final approval of the Settlement.

<b>d)    The Risk of Maintaining Class Action Status Through Trial</b>

Absent the Settlement, if Plaintiffs prevailed on a motion to dismiss, Defendants would have contested Plaintiffs' anticipated motion for class certification. The class certification process adds time and expense as it requires Plaintiffs' and expert depositions as well as expert reports on market efficiency. This motion's outcome would be far from certain. Even if a class was certified, it is conditional as Rule 23(c)(1) expressly provides that a class certification order may be "altered

11

or amended before final judgment." *See, e.g., Vizcaino v. U.S. Dist. Court for W. Dist. of Washington*, 173 F.3d 713, 721 (9th Cir. 1999) (certification order may be altered or amended "before the decision on the merits"). Because maintaining a class action to judgment is an expensive and risky enterprise, a fair and reasonable settlement is preferable to years of uncertainty. *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *6 (C.D. Cal. June 10, 2005) ("[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results") (*citing Nat'l Rural Telecommc'ns.*, 221 F.R.D. at 526 (internal quotation omitted)); *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016) ("Because plaintiffs had not yet filed a motion for class certification, there was a risk that the class would not be certified."). Accordingly, there were many risks to maintain this action as a class action through trial.

### e)    Amount Offered in the Settlement

In evaluating a settlement's fairness, a fundamental question is how the value of the settlement compares to the amount the class potentially could recover at trial, discounted for risk, delay and expense. In this regard, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Mego*, 213 F.3d at 459 (citation omitted). Indeed, "[t]here is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]" *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 119 (2d Cir. 2005).

The proposed Settlement is well within the range of reasonableness- and is indeed an excellent result- in light of the best possible recovery at trial and the risks of continued litigation.

The Settlement provides for a recovery of $3,100,000 in cash.  In consultation with their experts, Plaintiffs estimate that if they prevailed on all of their claims based on the Settlement Class and Settlement Class Period as currently constituted the maximum recovery would be between $15 million and $21.6 million. The Settlement Amount of $3,100,000 constitutes between 14.3% and 21.6% of estimated recoverable damages if Plaintiffs prevailed on all claims.  This range of percentage of recovery of damages falls well within, and in fact exceeds, the range of approval. *See Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-CV-00419-MMD, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (Court finding that 3.5% of the maximum damages "is within the median recovery in securities class actions settled in the last few years."); *In re Biolase, Inc. Sec. Litig.*, No. SACV131300JLSFFMX, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (settlement recovers 8% of maximum recoverable damages finding higher recovery than other securities class actions); *McPhail v. First Command Fin. Plan., Inc.*, No. 05CV179-IEGJMA, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (settlement recovering 7% of estimated damages was fair and adequate); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (settlement yielding 6% of potential damages after deducting fees and costs was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"). Moreover, as Cornerstone Research reported, in 2019 the median settlement as a percentage of damages for securities class actions for securities class actions with damages under $25 million was 12.8%. *See* Cornerstone Research, *Securities Class Action Settlements: 2019 Review and Analysis* at 6 (*See* Dkt. No. 29-6 at 6). Thus, the Settlement provides a recovery to Settlement Class Members that exceeds the 2019 median amount, and is an excellent result

13

**f)      The Extent of Discovery Completed and the Stage of the Proceedings**

The stage of the proceedings and the amount of discovery completed are also factors courts consider in determining the fairness, reasonableness and adequacy of a settlement. *See Mego,* 213 F.3d at 459. Formal discovery was not conducted due to the Private Securities Litigation Reform Act of 1995 ("PSLRA")'s discovery stay, 15 U.S.C. § 78u-4(b)(3)(B), however, [i]n the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, 'formal discovery is not a necessary ticket to the bargaining table.'" *Zynga*, 2016 WL 537946, at *12 (citing *Linney*, 151 F.3d at 1239).  Nonetheless, Plaintiffs did, through their counsel, conduct their own pre-filing investigation for the initial complaint. And although not filed, Lead Counsel conducted an in-depth investigation to prepare the detailed 98-page Amended Complaint. The investigation included, among other things, an extensive review and analysis of: (1) all relevant Westpac filings with the SEC; (2) Westpac's other public statements, including press releases and transcripts of Westpac's investor call; (3) reports of securities and financial analysts; (4) news articles and other commentary and analysis regarding Westpac; and (5) review and analysis of Australian Court documents filed in connection with proceedings involving Westpac in Australia.  Lead Counsel also consulted with damages experts and worked with a private investigator who interviewed former employees and other witnesses with potentially relevant information.  Additionally, Lead Counsel prepared a detailed mediation statement and evaluated Defendants' mediation statement which foreshadowed arguments they would have raised on a motion to dismiss.  Lead Counsel also attended a full-day mediation where such arguments were discussed in further detail.

As a result of these efforts, Plaintiffs, through their counsel, had a comprehensive understanding of the Action and sufficient information to make a well-informed decision regarding the fairness of the Settlement. *See Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-CV-09405-CAS, 2014 WL 439006, at *4 (C.D. Cal. Jan. 30, 2014) (approving settlement where record established that "all counsel had ample information and opportunity to assess the strengths and weaknesses of their claims and defenses"); *Redwen*, 2013 WL 12303367, at *7 (settlement approved when, as here, "the parties have spent a significant amount of time considering the issues and facts in this case and are in a position to determine whether settlement is a viable alternative"); *Perez v. Izea, Inc., et al.,* Case No. 2:18-cv-02784- SVW-GJS (C.D.Cal.) (Dkt. No. 50) (granting final approval in class action that settled before filing of amended complaint or a motion to dismiss); *Brown v. Price*, No. 3:17-CV-00869-HZ, 2017 WL 4698025, at *2, 3 (D. Or. Oct. 18, 2017) (finally approving class action prior to discovery or any substantive motions). For this reason, courts have commended class counsel for recognizing when, as in this case, a prompt resolution of the matter is in the best interest of the class. *See Glass v. UBS Fin. Servs., Inc*., No. C06-4068 MMC, 2007 WL 221862, at *15 (N.D. Cal. Jan. 26, 2007) ("Class counsel achieved an excellent result for the class members by settling the instant action promptly"), aff'd, 331 F. Appx. 452, 457 (9th Cir. 2009). Thus, this factor supports final approval of the Settlement.

### g)     Counsel's Experience and Views

Experienced counsel, negotiating at arm's-length, and endorsing the Settlement, weigh in favor of final approval. The views of the attorneys actively conducting the litigation and who are most closely acquainted with the facts of the underlying litigation are entitled to "great weight." *Nat'l Rural Telecomm*., 221 F.R.D. at 528; *see also International Broth. of Elec. Workers Local*

*697 Pension Fund*, 2012 WL 5199742, at \*3 (giving "considerable weight to Lead Counsel's representation that the Settlement Amount is a favorable recovery based on their understanding of the issues and challenges in this case in particular and their experience in securities litigation in general"); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd,* 661 F.2d 939 (9th Cir. 1981) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.").

Lead Counsel, intimately familiar with the strengths and weaknesses of the case and the core facts, believes the Settlement is fair, adequate and reasonable, and particularly so in view of the risks, burdens and expense of continued litigation. Lead Counsel are skilled practitioners and have extensive and significant experience litigating securities class actions.[5] "There is nothing to counter the presumption that Lead Counsel's recommendation is reasonable." *Omnivision*, 559 F. Supp. 2d at 1043. Accordingly, this factor strongly favors approval of the Settlement.

### h)      The Settlement is Not the Product of Collusion

Another factor to consider at final approval is whether there is any evidence that a settlement is the result of collusion. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011); *see also Mego*, 213 F.3d at 458. The Settlement has none of the indicia of collusion identified in the Ninth Circuit. *See Bluetooth Headset*, 654 F.3d at 947 ("subtle signs" of collusion include a "disproportionate distribution of the settlement" between the class and class

---

[5] *See* The Rosen Law Firm P.A.'s firm resume attached as Exhibit A to the Declaration of Sara Fuks of The Rosen Law Firm, P.A. Concerning Attorneys' Fees And Expenses ("Rosen Firm Fee Decl."), Ex. 2 to the Fuks Declaration.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' CONSENTED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION
Case No: 3:20-cv-00171-AC

counsel, "a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," or an agreement for "fees not awarded to revert to defendants rather than be added to the class fund"); *Arnett*, 2014 WL 4672458, at *10 (same); *Brown*, 2017 WL 4698025, at *3 ("decision to settle was fully informed" and a "product of good faith arms-length negotiations" and thus, "there is no evidence of fraud or collusion.").

Moreover, the Settlement was reached with the aid of an experienced mediator, Jed Melnick of JAMS. *In re China Med. Corp. Sec. Litig.*, No. 8:11-1061 JLS (ANX), 2014 WL 12581781, at *4 (C.D. Cal. Jan. 7, 2014) (finding settlement reached as a result of mediation before Mr. Melnick weighs in favor of approval); *Yang v. Focus Media Holding Ltd.*, No. 11 CIV. 9051 CM GWG, 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014) (noting that "[t]he participation of this highly qualified mediator [Mr. Melnick] strongly supports a finding that negotiations were conducted at arm's length and without collusion."); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (having a mediator's involvement "further suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel."); *In re Atmel Corp. Derivative Litig.*, No. C 06-4592 JF (HRL), 2010 WL 9525643, at *13 (N.D. Cal. Mar. 31, 2010) (the mediator's participation "weighs considerably" against collusiveness). Mr. Melnick's involvement in the settlement negotiations further supports approval.

Further, the Settlement is the product of extensive and informed arm's-length negotiations between able and competent counsel on both sides, with Mr. Melnick's substantial assistance. Defendants were zealously represented by Cravath, Swaine & Moore LLP and Jones Day, two highly-respected law firms recognized as having strong securities litigation practices. *See Arnett*,

17

2014 WL 4672458, at *10 (experience of class counsel and defense counsel support final approval). Accordingly, this factor, like the others discussed above, favors final approval.

### 3.    The Reaction of Class Members to the Proposed Settlement

The reaction of the Settlement Class is an important factor in evaluating whether to approve a proposed settlement. The absence of objections to a proposed settlement supports final approval. *Omnivision*, 559 F. Supp. 2d at 1043. As detailed in Section C, *infra*, Notice was disseminated to Settlement Class Members by several methods including mailing and publication. The deadline to exclude oneself from the Settlement was March 8, 2021 and to object to the Settlement is March 30, 2021. Bravata Decl., ¶¶10-11.

As of the date of this motion, no Settlement Class Member has objected to the Settlement or to the request for attorneys' fees, reimbursement of out-of-pocket expenses, or the Award to Lead Plaintiff. *Id.* SCS has received only nine requests for exclusion. *Id.*  However, only one out of these nine Settlement Class Members held their shares through the alleged corrective disclosure. Accordingly, only one of the purportedly excluded Settlement Class Members' shares were allegedly damaged and would have recognized losses (of $80.00).  The remaining 8 Settlement Class Members requesting exclusion are not eligible to receive any recovery pursuant to the Settlement. These exclusion requests do not trigger the termination threshold in ¶40 of the Stipulation. The Settlement Class' positive reaction to the Settlement supports final approval. *Brown v. China Integrated Energy Inc.*, No. CV1102559BROPLAX, 2015 WL 12712081, at *8 (C.D. Cal. Aug. 19, 2015) (court finding the class response to a settlement is "positive" in "absence of any substantive objections to the terms or conditions of the proposed settlement, the class."); *Arnett*, 2014 WL 4672458, at *10 (final approval supported when only 99 opt-outs and four

objections from a class of 663,192 members). "[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon*, 150 F.3d at 1027; *see also Mego Fin. Corp*., 213 F.3d at 458. The overwhelmingly positive reaction to the Settlement supports its final approval.

In short, the pertinent factors courts consider support that the Settlement is fair, reasonable and adequate. Thus, the Court should finally approve the Settlement.

### C.     The Notice Program Satisfied Due Process and Complied with Fed. R. Civ. P. 23(e)

The Ninth Circuit requires that class notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980) (citation omitted). Due process requires that class members be given notice of a proposed settlement and their right to be heard at the fairness hearing. There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements. Rather, to satisfy due process and comply with Rule 23(e), notice must only fairly apprise class members of the subject matter of the suit, the proposed terms of the settlement, and the members' opportunity to be heard. *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1177 (9th Cir. 1977); *see also Torrisi*, 8 F.3d at 1374–75. Notice is "adequate if it may be understood by the average class member." 4 Alba Conte & Herbert Newberg, Newberg On Class Actions § 11.53 at 167.

### 1.     The Dissemination of Notice Satisfies Due Process

There is no statutory or due process requirement that all class members receive actual notice by mail or other means. Rather, "individual notice must be provided to those Class Members

19

who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175–76 (1974). "Rule 23(e) gives the Court 'virtually complete' discretion as to the manner of service of settlement notice." *Colesberry v. Ruiz Food Prod., Inc.*, No. CVF 04-5516 AWISMS, 2006 WL 1875444, at *7 (E.D. Cal. June 30, 2006) (citing *Franks v. Kroger Co.*, 649 F.2d 1216, 1222–23 (6th Cir. 1981)). Courts routinely find that a combination of a mailed postcard directing class to a more detailed online notice, as done here, is sufficient to satisfy due process requirements. *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (citing cases); *Barani v. Wells Fargo Bank, N.A.*, No. 12CV2999-GPC KSC, 2014 WL 1389329, at *10 (S.D. Cal. Apr. 9, 2014) (approving combination of postcard and online notice in consumer class action).

Pursuant to and in compliance with the Preliminary Approval Order, the Court-appointed Claims Administrator, Strategic Claims Services ("SCS") mailed 84,341 copies of the Postcard Notice to potential Settlement Class Members. Bravata Decl. at ¶6. On October 29, 2020, SCS posted on a URL it dedicated to this Settlement which included copies of the Long Notice, Postcard Notice, Stipulation, Preliminary Approval Order, and the Proof of Claim and Release Form ("Proof of Claim"). *Id.* ¶8. On November 23, 2020, SCS caused *Investor's Business Daily* to print and *GlobeNewswire* to disseminate electronically the Summary Notice. *Id.* ¶7. As such, this Court should approve the Notice program as satisfying due process and the PSLRA's mandate.

### 2.    Contents of the Notice Satisfy Due Process

Plaintiffs respectfully submit that the Notice program utilized here readily meets the due process standard. The Ninth Circuit provides that proper notice should provide: (1) the material

terms of the proposed settlement; (2) disclosure of any special benefit to the class representatives; (3) disclosure of the attorneys' fees provisions; (4) the time and place of the final approval hearing and the method for objecting to the settlement; (5) explanation regarding the procedures for allocating and distributing the settlement funds; and (6) the address and phone number of class counsel and the procedures for making inquiries. *See Marshall*, 550 F.2d at 1178; *Nat'l Rural Telcomms. Coop.*, 221 F.R.D. at 529 (finding notice sufficient when, as here, it described the background of the case and the terms of the proposed settlement, and provided class members with "clear instructions about how to object").

Here, the Court-approved Notice provided all of the required information: a description of the $3.1 million Settlement Fund and Plan of Allocation of the Settlement Fund; Lead Counsel's intent to apply for a fee award in an amount not to exceed one-third of the Settlement Fund and an amount not to exceed $40,000 for expense and cost reimbursements including reimbursement to the Plaintiffs for their reasonable costs and expenses due to their representation in the Action; and the contact information for Lead Counsel and the Claims Administrator, including how to make inquiries to both. The Notice also included the date, time, and place of the Settlement Hearing, described how to file a claim, described how to object to or request exclusion from the Settlement, and informed class members that any objection must be received by the Court and counsel for the Parties no later than March 30, 2021. Furthermore, the Court-approved Notice adequately informed Settlement Class Members of the Settlement's impact including release of claims against Defendants for any class members who do not opt out. Bravata Decl., Exs. A, C-D.

In sum, broad dissemination of the Court-approved Notice satisfied due process and PSLRA requirements. Accordingly, the Settlement should be granted final approval.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' CONSENTED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION
Case No: 3:20-cv-00171-AC

**D.** **The Plan of Allocation of the Net Settlement Fund Is Fair, Adequate, and Reasonable and Should Be Approved**

Plaintiffs request the Court finally approve the Plan of Allocation, previously submitted in the preliminary approval motion, for the purpose of administering the Settlement. "Approval of a settlement, including a plan of allocation, rests in the sound discretion of the court." *Heritage*, 2005 WL 1594403, at *11 (citing *Class Plaintiffs*, 955 F.2d at 1284 (citation omitted)). "To warrant approval, the plan of allocation must also meet the standards by which the . . . settlement was scrutinized – namely, it must be fair and adequate." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 668 (E.D. Va. 2001) (citing *Class Plaintiffs*, 955 F.2d at 1284–85). An allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel. *Heritage*, 2005 WL 1594403, at *11. "[A] plan of allocation . . . fairly treats class members by awarding a pro rata share to every Authorized Claimant, even as it sensibly makes interclass distinctions based upon, inter alia, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue." *Redwen*, 2013 WL 12303367, at *8 (citation and internal quotation marks omitted).

Here, Lead Counsel prepared the Plan of Allocation with the assistance of a consulting damages expert. Fuks Decl. ¶¶45-48. The Plan of Allocation was fully disclosed in the Long Notice available to all potential Settlement Class Members and, as of the filing of this motion, no Settlement Class Member has filed an objection to it. Bravata Decl., ¶11. Under the Plan of Allocation, the Net Settlement Fund will be distributed among Authorized Claimants on a *pro rata* basis based on "Recognized Loss" formulas tied to liability and damages. These formulas consider the amount of alleged artificial inflation in the prices of Westpac ADRs as quantified by Plaintiffs' expert. Plaintiffs' consulting damages expert analyzed the movement in the prices of Westpac

22

ADRs and took into account the portion of the price drops attributable to the alleged fraud. Authorized Claimants will be eligible for a payment based on when they purchased, held, or sold their Westpac ADRs.

Accordingly, for all of the reasons set forth herein and in the Fuks Declaration, the Plan of Allocation is fair, reasonable, and adequate and should be approved.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (i) finally certify the Settlement Class; (ii) appoint Lead Plaintiff as Class Representative and Lead Counsel as Class Counsel; (iii) grant final approval of the Settlement; (iv) find that notice to the Settlement Class was provided as required and to the satisfaction of due process and the PSLRA; and (v) approve the Plan of Allocation as fair, reasonable and adequate.  Proposed orders, substantially in the form of Exhibit B to the Preliminary Approval Motion, will be submitted on April 13, when Plaintiffs' reply papers, if any, are to be filed.

Dated: March 16, 2021                                Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: */s/ Sara Fuks*
Laurence M. Rosen, Esq. (LR 5733)
Sara Fuks (SF 6034) (*pro hac vice*)
275 Madison Ave., 40th Floor
New York, NY 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: sfuks@rosenlegal.com

*Lead Counsel for Plaintiffs*

23

**RANSOM, GILBERTSON, MARTIN & RATLIFF, LLP**
Jeffrey S. Ratliff
8401 NE Halsey Street Suite 208
Portland, OR 97220
T: 503-226-3664

*Liaison Counsel for Plaintiffs*

24