**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**

| | |
|---|---|
| JOHN BYRNE, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>WESTPAC BANKING CORPORATION, BRIAN CHARLES HARTZER, and PETER FRANCIS KING,<br><br>    Defendants. | **Case No: 3:20-cv-00171-AC** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF**

## TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT ...................................................................................... 1

II.  ARGUMENT ................................................................................................................. 2

    A.   This Court Should Approve Lead Counsel's Request for Attorneys' Fees of One-Third of the Common Fund ............................................................................... 2

        1.   The Common Fund Doctrine Entitles Plaintiffs' Counsel to an Award of Attorneys' Fees ................................................................................. 2

        2.   The Court Should Apply the Percentage-of-Recovery Method ............................. 3

        3.   Attorneys' Fees of One-Third of the Settlement Fund is Reasonable ................... 4

        4.   Evaluation of the Ninth Circuit's Factors for Awarding Attorneys' Fees in Common Fund Cases Supports a Fee of One-Third of the Settlement Fund........ 6

            a)   The Result Counsel Achieved Supports the Requested Fee ............................. 7

            b)   The Risks of Litigation ..................................................................... 8

            c)   Skilled Counsel Performed Quality Work to Reach the Settlement .............. 11

            d)   The Contingent Nature of Counsel's Fee and the Financial Burden Lead Counsel Carried ......................................................................... 13

            e)   A Fee Award of One-Third Is Comparable to Attorneys' Fees Awarded in Similar Cases ............................................................................. 16

        5.   The Reaction of the Settlement Class ................................................................. 17

        6.   The Lodestar Cross-Check Supports The Fee Request ........................................ 18

    B.   The Court Should Approve Reimbursement from the Settlement Amount of Counsels' Out-of-Pocket Expenses Incurred Achieving the Settlement .................. 20

    C.   The Court Should Approve an Award to Lead Plaintiff for His Time Dedicated to His Service to the Class ................................................................................. 21

III.  CONCLUSION ........................................................................................................... 22

## TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ................................................................................................. 4

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) ............................................................................................. 15

*Atlas v. Accredited Home Lenders Holding Co.*,
No. 07-CV-00488-H (CAB), 2009 WL 3698393 (S.D. Cal. Nov. 4, 2009) ............................ 8

*Barbosa v. Cargill Meat Sols. Corp.*,
297 F.R.D. 431 (E.D. Cal. 2013) ..................................................................................... 6, 15

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985) ........................................................................................................... 14

*Beaver v. Tarsadia Hotels*,
No. 11-CV-01842-GPC-KSC, 2017 WL 4310707 (S.D. Cal. Sept. 28, 2017) ....................... 5

*Blum v. Stenson*,
465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984) ................................................. 3, 16

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ......................................................................................................... 2, 3

*Buccellato v. AT & T Operations, Inc.*,
No. C10-00463-LHK, 2011 WL 3348055 (N.D. Cal. June 30, 2011) ................................... 19

*Class Plaintiffs v. Jaffe & Schlesinger, P.A.*,
19 F.3d 1306 (9th Cir. 1994) ................................................................................................ 3

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005) ........................................................................................................... 10

*Dyer v. Wells Fargo Bank, N.A.*,
303 F.R.D. 326 (N.D. Cal. 2014) .................................................................................... 21, 22

*Ellison v. Steven Madden, Ltd.*,
No. CV115935PSGAGRX, 2013 WL 12124432 (C.D. Cal. May 7, 2013) ............................. 3

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) .............................................................................................. 9

ii

*Gustafson v. Valley Ins. Co.*, No. CV,
01-1575-BR, 2004 WL 2260605 (D. Or. Oct. 6, 2004) ........................................................ 6, 14

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) ................................................................................................. 20

*Harris v. Vector Mktg. Corp.*,
No. C-08-5198 EMC, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) ........................................ 21

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ............................................................................................................. 7

*Hopkins v. Stryker Sales Corp.*,
No. 11-CV-02786-LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) .................................... 19

*In re American Apparel, Inc. S'holder Litig.*,
2014 WL 10212865 (C.D. Cal. July 28, 2014) ...................................................................... 4

*In re Atossa Genetics, Inc. Sec. Litig.*,
No. 13-CV-01836-RSM, 2018 WL 3546176 (W.D. Wash. July 20, 2018) ............................ 16

*In re Audioeye, Inc., Sec. Litig.*,
No. CV-15-00163-TUC-DCB, 2017 WL 5514690 (D. Ariz. May 8, 2017) ........................ 5, 16

*In re BP p.l.c. Sec. Litig.*,
852 F. Supp. 2d 767 (S.D. Tex. 2012) ................................................................................... 9

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ................................................................................................. 8

*In re Charter Commc'ns, Inc., Sec. Litig.*,
No. 4:02-CV-1186 CAS, 2005 WL 4045741 (E.D. Mo. June 30, 2005) ................................. 8

*In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*,
109 F.3d 602 (9th Cir. 1997) ............................................................................................... 18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .............................. 11

*In re Galena Biopharma, Inc. Derivative Litig.*,
No. 3:14-CV-00382-SI, 2016 WL 10840600 (D. Or. June 24, 2016) ................................... 11

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
279 F.R.D. 151 (S.D.N.Y. 2011) ......................................................................................... 22

iii

*In re Heritage Bond Litig.*,
No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005)................................... 4, 13

*In re Heritage Bond Litig.*,
No. 02-ML-1475-DT(RCX), 2005 WL 1594389 (C.D. Cal. June 10, 2005) ............... 4, 11, 17

*In re Ikon Off. Sols., Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000) ................................................................................. 4, 12

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ........................................................................ 18, 22

*In re M.D.C. Holdings Sec. Litig.*,
No. CV89-0090 E (M), 1990 WL 454747 (S.D. Cal. Aug. 30, 1990) .................................... 16

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)................................................................................... 5, 16

*In re Merrill Lynch & Co., Inc. Rsch. Rep. Sec. Litig.*, No. 02 MDL 1484 (JFK),
2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ................................................................. 8

*In re Nature's Sunshine Prod., Inc.*,
No. 2:06-CV-267 TS, 2006 WL 2380965 (D. Utah Aug. 16, 2006)....................................... 13

*In re Nuvelo, Inc. Sec. Litig.*,
No. C 07-04056 CRB, 2011 WL 2650592 (N.D. Cal. July 6, 2011) ..................................... 16

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................................ passim

*In re Oracle Corp. Sec. Litig.*,
No. C01-00988SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009).......................................... 14

*In re Pac. Enterprises Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995)..................................................................................... 4, 5, 8

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994)..................................................................................... 3, 6, 19

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005) ........................................................................... 15, 22

*Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*,
No. 3:09-CV-00419-MMD, 2012 WL 5199742 (D. Nev. Oct. 19, 2012) ................................ 7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN
AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

*Jenson, v. First Tr. Corp.*,
No. CV 05-3124 ABC (CTX), 2008 WL 11338161 (C.D. Cal. June 9, 2008) ................. 21, 22

*Katz v. China Century Dragon Media, Inc.*,
No. LACV1102769JAKSSX, 2013 WL 11237202 (C.D. Cal. Oct. 10, 2013) ................... 3, 20

*Khait v. Whirlpool Corp.*,
No. 06-6381 (ALC), 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ........................................ 16

*Kirchoff v. Flynn*,
786 F.2d 320 (7th Cir. 1986) ................................................................................................. 16

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
136 F. Supp. 3d 1159 (C.D. Cal. 2015) ................................................................................. 13

*Linney v. Cellular Alaska P'ship*,
No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997) ........................................ 21

*Luna v. Marvell Tech. Grp.*,
No. C 15-05447 WHA, 2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) ................................... 20

*Marshall v. Northrop Grumman Corp.*,
2020 WL 5668935 (C.D. Cal. Oct. 20, 2020) ....................................................................... 15

*Mauss v. NuVasive, Inc.*,
No. 13CV2005 JM (JLB), 2018 WL 6421623 (S.D. Cal. Dec. 6, 2018) ...................... 5, 12, 16

*McPhail v. First Command Fin. Plan., Inc.*,
No. 05CV179-IEGJMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ................................... 7

*Millan v. Cascade Water Services*,
2016 WL 3077710 (E.D. Cal. 2016) ....................................................................................... 5

*Missouri v. Jenkins by Agyei*,
491 U.S. 274 (1989) .............................................................................................................. 19

*Morris v. Lifescan, Inc.*,
54 F. App'x 663 (9th Cir. 2003) .............................................................................................. 5

*Patel v. Axesstel, Inc.*,
No. 3:14-CV-1037-CAB-BGS, 2015 WL 6458073 (S.D. Cal. Oct. 23, 2015) ................... 5, 16

*Rausch v. Hartford Fin. Servs. Grp.*,
No. 01-CV-1529-BR, 2007 WL 671334 (D. Or. Feb. 26, 2007) ........................................ 3, 6

*Razilov v. Nationwide Mut. Ins. Co.*,
No. 01-CV-1466-BR, 2006 WL 3312024 (D. Or. Nov. 13, 2006) ..................................... 6, 22

*Redwen v. Sino Clean Energy, Inc.*,
No. CV 11-3936 PA (SSX), 2013 WL 12303367 (C.D. Cal. July 9, 2013) ........................... 11

*Robbins v. Koger Properties, Inc.*,
116 F.3d 1441 (11th Cir. 1997)........................................................................................ 14

*Rodman v. Safeway Inc.*,
No. 11-CV-03003-JST, 2018 WL 4030558 (N.D. Cal. Aug. 23, 2018) ................................... 7

*Rodriguez v. Disner*,
688 F.3d 645 (9th Cir. 2012).............................................................................................. 6

*Rutti v. Lojack Corp.*,
No. SACV 06-350 DOC JCX, 2012 WL 3151077 (C.D. Cal. July 31, 2012)......................... 19

*Schuler v. Medicines Co.*,
No. CV 14-1149 (CCC), 2016 WL 3457218 (D.N.J. June 24, 2016)...................................... 16

*Singer v. Becton Dickinson & Co.*,
No. 08-CV-821-IEG (BLM), 2010 WL 2196104 (S.D. Cal. June 1, 2010).......................... 5, 6

*Steiner v. Am. Broad. Co.*,
248 F. App'x 780 (9th Cir. 2007) ....................................................................................... 18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ........................................................................................................... 14

*Vaccaro v. New Source Energy Partners L.P.*,
No. 15 CV 8954 (KMW), 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ............................... 16

*Vincent v. Hughes Air W., Inc.*,
557 F.2d 759 (9th Cir. 1977)................................................................................................ 3

*Vincent v. Reser*,
No. C 11-03572 CRB, 2013 WL 621865 (N.D. Cal. Feb. 19, 2013)................................. 3, 20

*Vinh Nguyen v. Radient Pharm. Corp.*,
No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) .............................. 10

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002)....................................................................................... passim

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN
AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

*Ward v. Succession of Freeman*,
    854 F.2d 780 (5th Cir. 1988) ................................................................................ 14

*Yedlowski v. Roka Bioscience, Inc.*,
    No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) ........................... 9, 13

**Statutes**

15 U.S.C. §78u-4(a)(6) ............................................................................................ 4

15 U.S.C.A. § 78u-4(a)(4) ....................................................................................... 21

**Rules**

Fed. R. Civ. P. 23 .................................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN
AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Edward Davies ("Davies" or "Lead Plaintiff") and Named Plaintiff John Byrne ("Byrne" and with Davies, "Plaintiffs"),[1] respectfully submit this memorandum of points and authorities in support of their motion for an application for an award of attorneys' fees, reimbursement of litigation expenses, and an award to Lead Plaintiff.

## I.     PRELIMINARY STATEMENT

As detailed in the Stipulation, Westpac Banking Corporation ("Westpac" or the "Company"), Brian Charles Hartzer, and Peter Francis King ("Defendants") have agreed to pay $3.1 million in cash to settle the claims Plaintiffs allege in this proposed class action ("Settlement"). Given the relevant circumstances – most notably the Action's complicated nature and the risks of pursuing the Action through motions to dismiss, discovery, summary judgment, trial, and any appeals – this recovery is an excellent result for the Settlement Class. Through the efforts of their counsel, Plaintiffs achieved the Settlement through comprehensive and thorough investigation and arms' length settlement negotiations.

Lead Counsel has not received any compensation or reimbursement of out-of-pocket expenses for their prosecution of this case. Lead Counsel respectfully requests that the Court award it an attorneys' fee of one-third of the Settlement Fund ($1,033,333.33), including any accrued interest, and that they be reimbursed out of the Settlement Fund for out-of-pocket litigation expenses in the amount of $24,776.41 plus any accrued interest. The expenses Plaintiffs' Counsel incurred in connection with the prosecution of the Action were both reasonable and necessary to

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings set forth and defined in the Stipulation and Agreement of Settlement, filed on October 12, 2020 (the "Stipulation") (Dkt. No. 29-4).

prosecute the Action. In addition, Lead Plaintiff Davies approves Plaintiffs' Counsel's request for fees and expenses. *See* Declaration of Edward J. Davies ("Davies Decl.") at ¶¶8-9, attached as Exhibit 4 to the Fuks Declaration.[2]

Finally, Lead Counsel seeks reimbursement to Lead Plaintiff Davies for his time spent in carrying out his obligations on behalf of the putative class. The requested award of $1,500 is modest,  and is below similar awards granted in other matters for the effort Lead Plaintiff expended for members of the Settlement Class.

Accordingly, Plaintiffs respectfully submit that the Court should grant Lead Counsel's request for attorneys' fees and reimbursement of expenses and award to Lead Plaintiff.

## II.    ARGUMENT

### A.    This Court Should Approve Lead Counsel's Request for Attorneys' Fees of One-Third of the Common Fund

#### 1.    The Common Fund Doctrine Entitles Plaintiffs' Counsel to an Award of Attorneys' Fees

Under the "common fund" doctrine, attorneys who achieve a benefit for a class are entitled to a reasonable fee as compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (establishing a common fund for persons other than the lawyer who establishes it

---

[2] The Declaration of Sara Fuks in Support of Plaintiffs' Motions for: (1) Final Approval of Proposed Class Action Settlement and Plan of Allocation; and (2) An Award of Attorneys' Fees, Reimbursement Expenses, and Award to Lead Plaintiff ("Fuks Declaration" or "Fuks Decl.") contains a detailed description of the allegations and claims, the procedural history of the Action, and the events that led to the Settlement, among other matters

The Fuks Declaration is an integral part of this motion and is incorporated herein by reference. For the sake of brevity, the Court is respectfully referred to the Fuks Declaration for, *inter alia*, a detailed description of the allegations and claims, the procedural history of the Action, the risks faced by the Settlement Class in pursuing litigation, the negotiations that led to a settlement, and a description of the services provided by Lead Counsel.

entitles lawyer to reasonable attorneys' fees from the fund); *see also Vincent v. Reser*, No. C 11-03572 CRB, 2013 WL 621865, at *4 (N.D. Cal. Feb. 19, 2013) (quoting *Boeing*, 444 U.S. at 478). Even before that, the Ninth Circuit had reasoned that creating, increasing, or preserving a common fund entitles a lawyer to "the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The common fund doctrine prevents unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994), *aff'd in part, Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994).

### 2. The Court Should Apply the Percentage-of-Recovery Method

Even as district courts have the discretion in common fund cases to utilize either the percentage-of-the-fund or the lodestar method, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002), courts typically use the percentage-of-recovery method. *See Blum v. Stenson*, 465 U.S. 886, 900, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984), n. 16 (1984) (percentage-of-recovery approach is appropriate for determining attorneys' fees in common fund cases); *see also*, *Ellison v. Steven Madden, Ltd.*, No. CV115935PSGAGRX, 2013 WL 12124432, at *8 (C.D. Cal. May 7, 2013) (finding "use of the percentage method" to be the "dominate approach in common fund cases."); *Rausch v. Hartford Fin. Servs. Grp.*, No. 01-CV-1529-BR, 2007 WL 671334, at *2 (D. Or. Feb. 26, 2007) (utilizing percentage method and recognizing it is the preferred approach in the Ninth Circuit). District courts apply the percentage-of-recovery approach, preferring it over the lodestar/multiplier approach because "it aligns the lawyers' interests with those of the class [and] also simplifies the approval analysis." *Katz v. China Century Dragon Media, Inc.*, No. LACV1102769JAKSSX, 2013 WL 11237202, at *7 (C.D. Cal. Oct. 10, 2013). Further, the plain text of the Private Securities Litigation Reform Act of 1995 ("PSLRA") recognizes that the

3

percentage-of-recovery is the preferable approach to awarding fees. *See* 15 U.S.C. §78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class."). Thus, the Court should utilize the percentage-of-recovery method to compensate Lead Counsel in this case.

### 3.   Attorneys' Fees of One-Third of the Settlement Fund is Reasonable

Although the Ninth Circuit has established a benchmark in common fund cases of 25%, the Court may adjust upwards or downwards for special circumstances. *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (Ninth Circuit affirming fee of one-third of settlement fund); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *18 (C.D. Cal. June 10, 2005) (awarding one-third of settlement amount).  Courts in the Ninth Circuit have recognized that "'in most common fund cases, the award exceeds the benchmark… [and that] ***this is particularly true in securities class actions***…"  *In re American Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *23 (C.D. Cal. July 28, 2014), *quoting In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008).

Securities class actions are notoriously complex, difficult to prove, and risky.  *In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *6 (C.D. Cal. June 10, 2005).  Moreover, "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA."  *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000). "[T]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action."  *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009). For these reasons, among others, awards in securities class actions typically exceed the benchmark. *Omnivision*, 559 F. Supp.

2d at 1047.

Further, "District courts in this circuit have routinely awarded fees of one-third of the common fund or higher after considering the particular facts and circumstances of each case." *Beaver v. Tarsadia Hotels*, No. 11-CV-01842-GPC-KSC, 2017 WL 4310707, at \*10 (S.D. Cal. Sept. 28, 2017) (listing cases within the Ninth Circuit that approved a fee award of one-third the common fund).

In securities class action settlements under $10 million courts in the Ninth Circuit frequently award fees above the 25% benchmark. *See e.g. In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 463 (9th Cir. 2000) (affirming fee award of one-third of $1.725 million settlement); *In re Audioeye, Inc., Sec. Litig.*, No. CV-15-00163-TUC-DCB, 2017 WL 5514690, at \*4 (D. Ariz. May 8, 2017) (awarding fees of one-third of $1,525,000 settlement); *Mauss v. NuVasive, Inc.*, No. 13CV2005 JM (JLB), 2018 WL 6421623, at \*7 (S.D. Cal. Dec. 6, 2018) (awarding attorneys' fees of 30% of $7.9 million settlement); *Patel v. Axesstel, Inc.*, No. 3:14-CV-1037-CAB-BGS, 2015 WL 6458073, at \*8 (S.D. Cal. Oct. 23, 2015) (awarding attorneys' fees of 30% of $1.25 million settlement). *See also In re Pacific Enterprises*, 47 F.3d at 379 (affirming a 33% attorneys' fees award in a case where the settlement fund was $12 million)

Courts in the Ninth Circuit also routinely award attorneys' fees above the benchmark in non-securities, common fund actions. *See e.g., Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at \*8 (S.D. Cal. June 1, 2010) (awarding attorneys' fees of one-third of common fund and collecting cases noting that "the request for attorneys' fees in the amount of 33.33% of the common fund falls within the typical range of 20% to 50% awarded in similar cases."); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee); *Millan v. Cascade Water Services*, 2016 WL 3077710, at \*11-12 (E.D. Cal. 2016) (approving an award

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

of 33% of the common fund); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) (awarding one-third of the settlement fund); *Singer*, 2010 WL 2196104, at *9 (awarding one-third of settlement fund); *Rausch*, 2007 WL 671334, at *2 (awarding 30% of settlement fund); *Gustafson v. Valley Ins. Co.*, No. CV 01-1575-BR, 2004 WL 2260605, at *2 (D. Or. Oct. 6, 2004) (same); *Razilov v. Nationwide Mut. Ins. Co.*, No. 01-CV-1466-BR, 2006 WL 3312024, at *3 (D. Or. Nov. 13, 2006) (same).

The guiding principle in this Circuit is that a fee award be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1296 (citation and emphasis omitted). In employing the percentage method, courts may perform a lodestar cross-check to confirm the reasonableness of the requested fee. *Vizcaino*, 290 F.3d at 1047 (affirming use of percentage method and applying the lodestar method as a cross-check). Here, in view of the result obtained, the contingent fee risk, the lodestar cross-check, and other relevant factors, an award of one-third of the recovery obtained for the Settlement Class is appropriate under either analysis.

> **4.** **Evaluation of the Ninth Circuit's Factors for Awarding Attorneys' Fees in Common Fund Cases Supports a Fee of One-Third of the Settlement Fund**

Courts in the Ninth Circuit consider several factors when determining whether a fee award is "reasonable under the circumstances." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012). These factors include: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; (5) the reaction of the Settlement Class; and (6) awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048–51. The Ninth Circuit has explained that district courts should not use these factors as a rigid checklist or otherwise weigh each factor individually. Rather, courts should evaluate fees they award in the context of the totality of the circumstances. *Id.* Each of these factors, along with the lodestar cross-check, supports approving the requested fee.

6

### a) The Result Counsel Achieved Supports the Requested Fee

Courts consistently recognize that the result achieved is an important factor to consider in evaluating a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting the "most critical factor is the degree of success obtained"); *Rodman v. Safeway Inc.*, No. 11-CV-03003-JST, 2018 WL 4030558, at *3 (N.D. Cal. Aug. 23, 2018); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). Plaintiffs submit that the $3.1 million proposed Settlement is an excellent result for the Settlement Class, both quantitatively and when considering the risk of a lesser, or no, recovery if the case proceeded through motions to dismiss, discovery, class certification, summary judgment, and trial.

The Settlement exceeds the median recovery of comparable securities fraud class action settlements in 2019. The Settlement represents a recovery of between 14.3% and 20.6% of Plaintiffs' estimated recoverable damages of between $15 million and $21.6 million, assuming they prevailed on all claims. As Cornerstone Research reported, in 2019 the median settlement as a percentage of damages for securities class actions with damages less than $25 million was 12.8%. *See* Cornerstone Research, *Securities Class Action Settlements: 2019 Review and Analysis* at 6 (Dkt. No. 29-6 at 6).

The percentage of recovery achieved here also exceeds the percentage of recovery compared to other securities class actions within the Ninth Circuit. *See, e.g., Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*, No. 3:09-CV-00419-MMD, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement recovering about 3.5% of the maximum damages that plaintiffs believe could be recovered at trial and noting that the amount is within the median recovery in securities class actions settled in the last few years); *McPhail v. First Command Fin. Plan., Inc.*, No. 05CV179-IEGJMA, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (settlement recovering 7% of estimated damages was fair and adequate); *Omnivision*,

559 F. Supp. 2d at 1042 (settlement yielding 6% of potential damages after deducting fees and costs was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements").

The recovery also compares very favorably to recoveries achieved in cases in other Circuits. *See, e.g., In re Merrill Lynch & Co., Inc. Rsch. Rep. Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (A settlement representing a recovery of approximately 6.25% of estimated damages is "at the higher end of the range of reasonableness of recovery in class actions securities litigations."); *In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses); *In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186 CAS, 2005 WL 4045741, at *6 (E.D. Mo. June 30, 2005) ("average 5.5% – 6.2% of estimated losses recovered in securities fraud class [action] settlements since 1995."). Thus, the Settlement Amount supports the fee request.

### b)    The Risks of Litigation

The risk of further litigation is also an important factor in determining a fair fee award. 290 F.3d at 1048 (noting "[r]isk is a relevant circumstance" in awarding attorneys' fees); *Pac. Enters.*, 47 F.3d at 379 (finding that attorneys' fees were justified "because of the complexity of the issues and the risks"); *see also Atlas v. Accredited Home Lenders Holding Co.*, No. 07-CV-00488-H (CAB), 2009 WL 3698393, at *3 (S.D. Cal. Nov. 4, 2009) (approving settlement where "litigating the complex securities fraud class action to completion would have resulted in substantial delay and expense").

As Plaintiffs describe, substantial risks and uncertainties in the Action required the skill and focus of Lead Counsel to bring this matter to a favorable resolution. Fuks Decl., at ¶¶28-44.

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

At the time of the Settlement, Plaintiffs faced the risk that they might not survive Defendants' anticipated motion(s) to dismiss, and that even if they did, they might ultimately be unable establish liability and the Settlement Class' full amount of damages. Defendants would have sought dismissal on jurisdictional grounds including venue and *forum non conveniens* given their assertion that Australia was the better forum to hear this case because of the pendency of a securities class action against Westpac in Australia. Further, Defendants would have contested falsity and scienter. Plaintiffs faced challenges in pleading (and then ultimately proving) that Defendants' alleged misstatements about Westpac's policies and compliance with applicable anti-money laundering and counter-terrorism financing ("AML/CTF") laws were materially false and made with scienter. Defendants would have asserted that Plaintiffs could neither plead nor prove an intentional or severely reckless violation of the Securities Exchange Act of 1934 ("Exchange Act"). As noted in the Plaintiffs' Memorandum of Law in Support of Settlement ("Settlement Motion"), to succeed the Amended Complaint must satisfy the strict pleading standards of the PSLRA which "requires a plaintiff to plead a complaint of securities fraud with an unprecedented degree of specificity and detail" and is "not an easy standard to comply with." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). As a court observed in dismissing securities claims brought against BP following the Deepwater Horizon disaster, "[t]he Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading." *In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012). Because "[l]egal precedents are continually making it more difficult to plead securities class actions," courts have awarded higher fees in securities actions. *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016).

9

While Plaintiffs believe they would have overcome Defendants' arguments at the pleading stage there are no guarantees. Indeed, in recent years, securities fraud class action dismissal rates have been close to 50%.[3]

If Plaintiffs defeated Defendants' anticipated motion(s) to dismiss and the case proceeded through discovery, Defendants would raise the same arguments concerning falsity and scienter at summary judgment and trial. Countering these themes at summary judgment and trial would have required nuanced evidence regarding AML/CTF laws. Significant hurdles to Plaintiffs' ability to convince a fact-finder of the key elements of Plaintiffs' claims loomed.

In addition, the Parties would have asserted different positions regarding loss causation. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345–46 (2005) (plaintiffs bear the burden of proving "that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover'"). Defendants would have also asserted that the alleged corrective disclosure did not reveal any misrepresentations or omissions and that the truth of the alleged misstatements were already on the market. If they prevailed, the class claims would have failed. *See Vinh Nguyen v. Radient Pharm. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) (approving settlement and noting that "[p]roving and calculating damages required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the law" with "[t]he outcome of that analysis [being] inherently difficult to predict"). At summary judgment and/or trial, the Parties would have vigorously contested loss causation, involving a costly and uncertain battle of the experts.

---

[3] *See,* Securities Class Action Filings, 2019 Year in Review, at 16, available at: https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Filings-2019-Year-in-Review.

Accordingly, Plaintiffs faced the possibility that the Court would grant Defendants' anticipated motion(s) to dismiss and for summary judgment and, regardless of who would ultimately be successful at trial, both sides would have had to present complex and nuanced information to a jury with no certainty as to the outcome. *See In re Omnivision*, 559 F. Supp. 2d at 1047 (noting that the risks of litigation, including the ability to prove loss causation and the risk that Defendants prevail on damages, support the requested fee).

But for the Settlement, Plaintiffs and the Settlement Class faced the risk that the Court would dismiss the action at the pleadings stage, yielding no recovery. If the Court sustained Plaintiffs' claims, they then faced the risks of years of litigation with no guarantee of a greater- or any- recovery. Lead Counsel achieved an excellent result for the Settlement Class in the face of many risks. Under these circumstances the steep risks of continued litigation support awarding attorneys' fees of one-third of the Settlement Fund.

c)    **Skilled Counsel Performed Quality Work to Reach the Settlement**

Courts recognize that the "prosecution and management of a complex national class action requires unique legal skills and abilities." *Heritage Bond*, No. 2005 WL 1594389, at *12 (citation omitted); *In re Galena Biopharma, Inc. Derivative Litig.*, No. 3:14-CV-00382-SI, 2016 WL 10840600, at *2 (D. Or. June 24, 2016) (recognizing securities action "involves complex factual and legal issues."). While courts have always recognized that securities class actions carry significant risks, post-PSLRA rulings make it clear that the risk of no recovery (and hence no fee) has increased exponentially. *See Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSX), 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation, 'routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.'" (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No.

11

02-CV-3400 CM PED, 2010 WL 4537550, at *17 (S.D.N.Y. Nov. 8, 2010))); *In re Ikon Off. Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (noting that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA"); *Mauss*, 2018 WL 6421623, at *6 ("Securities class actions are complex actions to litigate. This case was no exception. It involved complex issues such as material misrepresentations, scienter, loss causation, and damages.").

Here, Lead Counsel investigated Plaintiffs' claims to formulate their theory of the case. The investigation included, among other things, an extensive review and analysis of: (1) all relevant Westpac filings with the SEC; (2) Westpac's other public statements, including press releases and transcripts of Westpac's investor calls; (3) reports of securities and financial analysts; (4) news articles and other commentary and analysis regarding Westpac; and (5) review and analysis of Australian Court documents filed in connection with proceedings involving Westpac in Australia. Lead Counsel also consulted with damages experts and worked with a private investigator who interviewed former employees and other witnesses with potentially relevant information. Utilizing this information, Lead Counsel drafted a detailed, 98-page amended complaint. Plaintiffs ultimately did not file the amended complaint given the Parties' agreement-in-principle to settle the action at the mediation.

Lead Counsel, The Rosen Law Firm, P.A. ("The Rosen Law Firm"), are experienced securities class action litigators.[4] Lead Counsel have amassed the skills and experience they needed to prosecute this case through decades of experience litigating and successfully settling more than

---

[4] *See* Rosen Law Firm resume attached as Exhibit A to the Declaration of Sara Fuks of The Rosen Law Firm, P.A. Concerning Attorneys' Fees and Expenses ("Rosen Law Firm Fee Decl.").

12

one hundred securities class actions.  Courts around the country have recognized the Rosen Law Firm's experience and competence. *See Yedlowski*, 2016 WL 6661336, at *21 (" The Rosen Law Firm is highly experienced in the complex field of securities fraud class action litigation"); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions"); *In re Nature's Sunshine Prod., Inc.*, No. 2:06-CV-267 TS, 2006 WL 2380965, at *2 (D. Utah Aug. 16, 2006) ( The Rosen Law  Firm is "qualified, experienced and able to vigorously conduct the proposed litigation.").

"[T]he quality of opposing counsel is [also] important in evaluating the quality of Plaintiff's counsel's work."  *Heritage Bond*, 2005 WL 1594403, at *20.  Here, Defendants chose as their counsel Cravath, Swaine & Moore LLP and Jones Day, two of the world's premier law firms boasting securities practices that have few equals. They staffed the case with talented and experienced lawyers and advocated forcefully for their clients. Accordingly, the favorable Settlement is attributable in substantial part to Lead Counsel's diligence, determination, hard work, and skill as it developed, litigated, and successfully negotiated the Settlement. This factor supports a fee of one-third.

**d)**  **The Contingent Nature of Counsel's Fee and the Financial Burden Lead Counsel Carried**

Lead Counsel undertook this action on an entirely contingent fee basis, taking the risk that the litigation would yield no recovery and leave it uncompensated for its time, as well as for its out-of-pocket expenses. Courts across the country recognize that the risk of receiving little or no recovery is a material factor in determining an award of attorneys' fees. *See Vizcaino*, 290 F.3d at 1048–50; *Omnivision*, 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing

13

those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee."); *Gustafson*, 2004 WL 2260605, at *2 (contingent nature of case and the financial burden carried by lead counsel support fee award). The Supreme Court has emphasized that private securities actions such as this provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (citation omitted); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (noting that the court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions).[5]

Indeed, in many securities class actions, plaintiffs' counsel took on the risk of pursuing claims on a contingency basis, expended considerable resources, yet received no remuneration whatsoever despite their diligence and expertise. *See, e.g., In re Oracle Corp. Sec. Litig.*, No. C01-00988SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009) (granting summary judgment to defendants after eight years of litigation, and after plaintiff's counsel incurred over $6 million in expenses and worked over 100,000 hours, representing a lodestar of approximately $48 million). Often, because of discovery of previously unknown facts, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, contingency litigation yields no fee for counsel. *See, e.g, Ward v. Succession of Freeman*, 854 F.2d 780 (5th Cir. 1988) (reversing plaintiffs' jury verdict for securities fraud); *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th

---

[5] Additionally, vigorous private enforcement of the federal securities laws can only occur if private plaintiffs can obtain some semblance of parity in representation with that available to corporate defendants. If this important public policy is to be carried out, courts should award fees that will adequately compensate private plaintiffs' counsel, taking into account the risks undertaken with a clear view of the economics of a securities class action.

14

Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation). As the court in *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980 (D. Minn. 2005) recognized, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *Id.* at 994.  Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion.

Since Lead Counsel's fee was entirely contingent, the only certainty was that there would be no fee without a successful result and that achieving success on behalf of Plaintiffs and the Class depended upon Lead Counsel's expending significant amounts of time, effort, and expense. Unlike Defendants' counsel who are paid hourly and reimbursed for their out-of-pocket expenses on a current basis, Lead Counsel has received no compensation for their efforts on behalf of Plaintiffs and the Class during the course of this litigation. Absent this Settlement, a material risk existed that Settlement Class Members and their counsel would obtain no recovery. Lead Counsel has risked non-payment of its out-of-pocket expenses and time dedicated to working on this matter, knowing that if their efforts were not successful, no fee would be paid. The contingent nature of Plaintiffs' counsel's fee arrangement supports a fee of one-third of the Settlement Fund. *See, e.g., Marshall v. Northrop Grumman Corp.*, 2020 WL 5668935, at 5-6 (C.D. Cal. Oct. 20, 2020) ("The risk of non-payment after years of hard-fought litigation "weighs substantially in favor" of a one-third fee.; *Barbosa*, 297 F.R.D. at 449 ("where recovery is uncertain, an award of one-third of the common fund as attorneys' fees has been found to be appropriate").

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

**e)**     **A Fee Award of One-Third Is Comparable to Attorneys' Fees Awarded in Similar Cases**

If this were not a class action, the customary fee arrangement would be contingent on a percentage basis and in the range of 30% to 40% of the recovery. *See, e.g., Blum*, 465 U.S. at 903 n.* ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."); *In re M.D.C. Holdings Sec. Litig.*, No. CV89-0090 E (M), 1990 WL 454747, at *7 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery."); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (40% contractual award if case had gone to trial).

The requested fee of one-third of the Settlement Fund is reasonable when compared to fee awards in similarly-sized securities class action settlements from district courts within the Ninth Circuit and around the country. *See e.g, In re Atossa Genetics, Inc. Sec. Litig.*, No. 13-CV-01836-RSM, 2018 WL 3546176, at *1 (W.D. Wash. July 20, 2018) (awarding 33% of $3.5 million settlement *Mego Fin.,* 213 F.3d at 463 (affirming fee award of one-third of $1.725 million settlement); *Audioeye,*, 2017 WL 5514690, at *4 (awarding fees of one-third of $1,525,000 settlement);  *In re Nuvelo, Inc. Sec. Litig.*, No. C 07-04056 CRB, 2011 WL 2650592, at *3 (N.D. Cal. July 6, 2011) (awarding fees of 30% of $8.9 million settlement); *Patel*, 2015 WL 6458073, at *8 (awarding 30% of attorneys' fees of $1.25 million settlement); *Mauss*, 2018 WL 6421623, at *7 (awarding attorneys' fees of  30% of $7.9 million settlement); *Schuler v. Medicines Co.*, No. CV 14-1149 (CCC), 2016 WL 3457218, at *8 (D.N.J. June 24, 2016) (awarding attorneys' fees of 33% of $4,2500,000 settlement fund in case that settled before decision on motion to dismiss); *Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *8 (S.D.N.Y. Dec. 14, 2017) (awarding one third of $2,850,000 settlement); *Khait v. Whirlpool Corp.*,

16

No. 06-6381 (ALC), 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (citing cases and awarding attorneys' fees equal to 33% of $3 million fund).

Accordingly, the attorneys' fee Plaintiffs request is within the range of fees district courts within the Ninth Circuit and around the country have awarded in comparable securities class action settlements.

### 5.    The Reaction of the Settlement Class

District courts in the Ninth Circuit also consider the reaction of the class when deciding whether to award fees and reimbursement of out-of-pocket expenses. *See Heritage*, 2005 WL 1594389, at *15 ("The presence or absence of objections . . . is also a factor in determining the proper fee award."). To date, Strategic Claims Services has mailed to potential Settlement Class members 84,341 copies of the Postcard Notice, published Summary Notice in *Investor's Business Daily* and through *PR Newswire*, and uploaded to a URL copies of the Stipulation, Long Notice, Proof of Claim, and Preliminary Approval Order. *See* Declaration of Josephine Bravata Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Bravata Decl.") ¶¶3-8, attached as Exhibit 1 to the Fuks Decl. While the time to object to the fee and expense application does not expire until March 30, 2021, to date, not a single objection has been received. *Id.* at ¶11. In addition, only nine potential Settlement Class members have requested exclusion. *Id.* at ¶10, Exhibit E. However, only one out of these nine Settlement Class Members held their shares through the alleged corrective disclosure.  Accordingly, only one of the purportedly excluded Settlement Class Members' shares were allegedly damaged and would have recognized losses (of $80.00).  The remaining 8 Settlement Class Members requesting exclusion are not eligible to receive any recovery pursuant to the Settlement. These exclusion requests do not trigger the termination threshold in ¶40 of the Stipulation. "The lack of objection from any Class Member supports the attorneys' fees award."

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). Should Plaintiffs receive any objections, Lead Counsel will address them in their reply papers. The lack of objection to the fees Plaintiffs notified the Settlement Class they would seek further supports the requested fee of one-third.

### 6.    The Lodestar Cross-Check Supports The Fee Request

Courts often compare attorneys' lodestar with a requested fee request made under the percentage of the fund method as a "cross check" on the reasonableness of the requested fee. *See Vizcaino*, 290 F.3d at 1050; *see also In re Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997) (comparing the lodestar fee to the percentage fee is an appropriate measure of a percentage fee's reasonableness).

Plaintiffs' Counsel's combined lodestar to date is $421,499.50. The requested fee represents a multiplier of 2.45. Fuks Decl. ¶64. The Ninth Circuit recognizes when utilizing the percentage-of-fund approach in common fund cases and applying a lodestar cross-check, an award resulting in a multiplier several times the lodestar is appropriate as this rewards attorneys "for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino*, 290 F.3d at 1051 (citation omitted). For example, the district court in *Vizcaino*, 290 F.3d 1043 approved a fee that reflected a multiple of 3.65 times counsel's lodestar. *Id.* The Ninth Circuit affirmed, holding that the district court correctly considered the range of multiples applied in common fund cases, and noting that a range of lodestar multiples from 1.0 to 4.0 are frequently awarded. *Id.*;[6] *see also Steiner v. Am. Broad. Co.*, 248 F.

---

[6] Furthermore, "[i]t is an established practice in the private legal market to reward attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, Economic Analysis of Law § 21.9, at 534-35 (3d ed. 1986). "Contingent fees that may far exceed the market value of the services if rendered on a

18

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

App'x 780, 783 (9th Cir. 2007) ("this multiplier [of 6.85] falls well within the range of multipliers that courts have allowed"); *Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."); *Buccellato v. AT & T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (granting 4.3 multiplier).

Plaintiffs' Counsel's lodestar represents 537.7 hours of work at current billing rates.[7] With respect to billing rates, Plaintiffs' Counsel submit that the rates billed, for attorneys ranging from $450 to $1,100 are comparable to peer defense-side law firms litigating matters of similar magnitude. Fuks Decl. ¶63.

Lead Counsel will also do additional work in support of the Settlement and distribution of the Settlement Fund to Settlement Class Members for which it will receive no additional compensation, including: preparation for, and participation in, the final approval hearing; responding to any objections; supervising the claims administration process being; moving for distribution the Net Settlement Fund in accordance with the Claims Administrator's recommendation; and supervising the distribution of the Net Settlement Fund to Settlement Class Members who have submitted valid claims. The lodestar cross check, therefore, supports this Court's awarding a fee of one-third of the Settlement Fund.

---

non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose." *WPPSS*, 19 F.3d at 1299.

[7] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283–84 (1989); *Rutti v. Lojack Corp.*, No. SACV 06-350 DOC JCX, 2012 WL 3151077, at *11 (C.D. Cal. July 31, 2012) ("it is well-established that counsel is entitled to current, not historic, hourly rates") (citing *Jenkins*, 491 U.S. at 284).

More, considering these factors together, including Plaintiffs' Counsels' risk, their efforts, and the result in this case, this Court should award the requested fee.

**B.    The Court Should Approve Reimbursement from the Settlement Amount of Counsels' Out-of-Pocket Expenses Incurred Achieving the Settlement**

Plaintiffs' Counsel have incurred expenses in an aggregate amount of $24,776.41[8] in prosecuting the Action. This request is well below the $40,000 reimbursement of expenses ceiling the Notice stated. These expenses are outlined in counsel's declarations submitted to the Court concurrently herewith. *See* Fuks Decl., ¶¶68-71, Exs. 2  and 3.

"Attorneys who create a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class." *Reser*, 2013 WL 621865, at *5. In assessing whether counsel's expenses are compensable in a common fund case, courts look to whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citation omitted); *Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

Here, Plaintiffs' Counsel seeks expenses that are of the type routinely charged to hourly paying clients and, therefore, should be reimbursed out of the common fund. *Katz*, 2013 WL 11237202, at *8 (granted expenses for "filing fees … private investigation fees, service of process fees, … press release and notice fees, expert consulting costs, photocopying costs, and online legal research expenses, and travel associated with pursuing the case."); *Luna v. Marvell Tech. Grp.*,

---

[8] The expense request is comprised of $23,776.41 from Rosen Law and $1,000 from Ransom, Gilbertson, Martin & Ratliff, LLP.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF

No. C 15-05447 WHA, 2018 WL 1900150, at *4 (N.D. Cal. Apr. 20, 2018) (reimbursement for experts, investigators, travel, filing costs, photocopies, and online legal and factual research granted as they were all reasonable and necessary.). The largest expenses Plaintiffs' Counsel incurred include investigator fees, expert fees, and mediation fees. *See* Exs. 2 and 3 to the Fuks Decl.

In sum, Plaintiffs' Counsel's expenses, in an aggregate amount of $24,776.41 were reasonably and necessarily incurred in the prosecution of the Action and should be approved.

### C.      The Court Should Approve an Award to Lead Plaintiff for His Time Dedicated to His Service to the Class

In connection with Lead Counsel's request for reimbursement of litigation expenses, Lead Plaintiff Davies seek reimbursement of $1,500 in costs for his time dedicated to this litigation. The PSLRA provides that courts are empowered to approve such awards to reimburse plaintiffs for reasonable costs and expenses related to the representation of the class. *See* 15 U.S.C.A. § 78u-4(a)(4). Accordingly, "[c]ourts across the country embrace incentive awards in light of the enormous benefits created by the class representatives." *Jenson, v. First Tr. Corp.*, No. CV 05-3124 ABC (CTX), 2008 WL 11338161, at *16 (C.D. Cal. June 9, 2008). The Ninth Circuit has noted that "[i]ncentive fees for class representatives serve much the same function as attorneys' fees do in the class action context: they provide the economic incentive necessary to ensure that meritorious actions are prosecute." *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *7 (N.D. Cal. July 18, 1997), *aff'd,* 151 F.3d 1234 (9th Cir. 1998).

Courts in the Ninth Circuit find that reimbursements to plaintiffs for their service to classes in the amount requested here, $1,500, is "presumptively reasonable." *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("Several courts in this District have indicated

21

that incentive payments … as a general matter [of] $5,000 is a reasonable amount."). In fact, courts within this circuit and around the country have granted substantially larger reimbursements to class representatives. *See e.g., Razilov,* 2006 WL 3312024, at *4 ($10,000 award to plaintiff); *Immune Response,* 497 F. Supp. 2d at 1173-74 ($40,000 reimbursement to lead plaintiff); *Jenson,*, 2008 WL 11338161, at *16 ($20,000 reimbursement to lead plaintiff); *Dyer*, 303 F.R.D. at 336 ($25,000 reimbursement to lead plaintiff); *Dyer*, 303 F.R.D. at 336 ($10,000 reimbursement to lead plaintiffs); *In re Xcel Energy, Inc., Sec., Deriv. & ERISA Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn. 2005) (approving a $100,000 award to lead plaintiffs, and noting that awards to lead plaintiffs are important because they further "the important policy role [lead plaintiffs] play in the enforcement of the federal securities laws on behalf of persons other than themselves"); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 166 (S.D.N.Y. 2011) (awarding $10,000 as an incentive and for lost time).

Lead Plaintiff fulfilled his obligations as a representative of this action, reviewing the initial complaint, providing counsel with his transactions in Westpac securities, reviewing and discussing his lead plaintiff motion, keeping up to date with news about Westpac, discussing the settlement and approving the settlement in principle, and reviewing the settlement documents. *See* Davies Declaration, attached as Exhibit 4 to the Fuks Decl. Accordingly, Lead Plaintiff Davies respectfully request that this Court approve a payment of $1,500.

## III.    CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests the Court award attorneys' fees of one-third of the Settlement Fund (($1,033,333.33), reimbursement of out-of-pocket litigation expenses in the amount of $24,776.41 plus interest accrued, and a $1,500 payment to Lead Plaintiff Davies.

22

Dated: March 16, 2021                        Respectfully submitted,

                                **THE ROSEN LAW FIRM, P.A.**

                                By: */s/ Sara Fuks*
                                Laurence M. Rosen (*pro hac vice*)
                                Sara Fuks  (*pro hac vice*)
                                275 Madison Ave., 40th Floor
                                New York, NY 10016
                                Tel: (212) 686-1060
                                Fax: (212) 202-3827
                                Email: lrosen@rosenlegal.com
                                Email: sfuks@rosenlegal.com

                                *Lead Counsel for Plaintiffs*

                                **RANSOM,  GILBERTSON,  MARTIN  &
                                RATLIFF, LLP**
                                Jeffrey S. Ratliff
                                8401 NE Halsey Street Suite 208
                                Portland, OR 97220
                                T: 503-226-3664

                                *Liaison Counsel for Plaintiffs*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR AN
AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF